BOYD *et ux. v.* COCA COLA BOTTLING WORKS.

(*Nashville.*  December Term, 1914.)

1. **FOOD. Bottling of tonic. Negligence. Pleading and proof. Variance.**

In an action against a bottling company for injuries from drinking a tonic negligently placed in a bottle containing a cigar stub, there was no fatal variance between an allegation of the declaration that defendant negligently placed the cigar stub in the bottle, and the proof that it was placed in the bottle by some one else, and was there when the bottle was filled, where the real negligence charged in the declaration was the bottling of the cigar stub and placing of the bottle on the market. (*Post, p.* 26.)

2. **FOOD. Poisonous substances. Contributory negligence.**

A consumer was not negligent for failure to examine a bottle of tonic for poisonous substances, where it was sealed when bought from the dealer to whom the bottling works had sold it, especially where the bottle and the fluid were both dark in color, and the poisonous substance, a cigar stub, could not have been readily discerned.  (*Post, p.* 26.)

3. **FOOD. Poisonous substances. Liability of Manufacturer to Consumer.**

In an action for injuries from drinking a tonic containing a poisonous substance, the bottle containing same having been bought sealed from an intermediate dealer to whom the defendant manufacturer had sold it, want of contract or privity between defendant and the person injured constituted no defense; a person who undertakes to perform an act which, if not done with care and skill, will imperil the lives of others, being liable to others suffering from his negligence.  (*Post, p.* 27.)

Cases cited and approved: Thomas v. Winchester, 6 N. Y., 397; Blood Balm Co. v. Cooper, 83 Ga., 457; Watson v. Augusta Brew-

Boyd v. Bottling Works.

ing Co., 124 Ga., 121; Salmon v. Libby, 219 Ill., 421; Bishop v. Weber, 139 Mass., 411; Mazetti v. Armour & Co., 48 L. R. A. (N. S.), 213.

Cases cited and distinguished: Burkett v. Mfg. Co., 126 Tenn., 467; Tomlinson v. Armour & Co., 75 N. J. L., 748, 19 L. R. A. (N S.), 923.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— G. N. TILLMAN, Judge.

TURNEY & TURNEY and B. A. BUTLER, for plaintiffs.

CHERRY & STEGER and McALLISTER, SMITH & McALLISTER, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This damage suit was instituted by W. C. Boyd and wife, Lou J. Boyd, and pending the suit Mrs. Boyd died. W. C. Boyd was appointed her administrator, and the case was revived.

A motion for a directed verdict in favor of defendant below was sustained by the trial court. Upon appeal this judgment was reversed by the court of civil appeals, and the case is before us on petition for *certiorari*, which has been granted.

Mrs. Lou Boyd was a lady in delicate health who was in the habit of occasionally drinking coca cola as a tonic and for its invigorating effects. Her husband bought for her a sealed bottle of this beverage from a retail dealer in Nashville. He carried the bottle home and poured a portion of its contents into a glass. His wife drank the liquid poured out, and immediately became intensely nauseated and suffered seriously from its effects.

Mr. Boyd examined the bottle and found therein a cigar stub about two inches long which had apparently been in the liquid for some time. It was shown on the trial that complaint was made by Mr. Boyd to an agent of the Coca Cola Bottling Works about the incident referred to, and this agent expressed regret and indignation and said that the company had employed some negroes who were careless about washing bottles into which coca cola was poured. The proof shows that it was the custom of defendant company to buy empty bottles around town and refill them. A physician testified for plaintiff below as to the poisonous effect of a fluid impregnated with nicotine from a cigar stub.

Defendant below introduced no proof, but made a motion for peremptory instructions, which was sustained on the ground that there was no privity of contract between the Boyds and the Coca Cola Bottling Works, inasmuch as the purchase was made from an intermediate dealer.

Before considering this proposition, there are some minor matters of which we should dispose.

It is first urged on behalf of the bottling works that there was a fatal variance between the declaration and the proof, in that the declaration charged defendants below with negligently placing the cigar stub in the bottle, while the proof tended to show that the cigar stub was placed in the bottle by some one else and was in the bottle when it was filled. The charge of the declaration is that the cigar stub "was placed in such bottle and sealed up with said fluid by defendant company, its agents and employees, and had been negligently placed upon the market for sale and for use as aforesaid." The real negligence charged in this declaration is the sealing up of the cigar stub in the bottle and the placing of such bottle on the market. It is immaterial as to who put the stub in the bottle, and a variance between the declaration and the proof in an immaterial matter does not affect the case.

It is next said that the plaintiffs below were guilty of contributory negligence in not examining more closely the bottle and its contents. We think there is nothing in this. The proof shows that the bottle and the fluid were both of a dark color, and the cigar stub could not be readily discerned. Furthermore, it is to be presumed that the contents of sealed packages put on the market to be used as a food or beverage are fit to be so used. A consumer is not negligent in failing to examine the same for poisonous substances.

There are some other matters mentioned in the brief filed for the bottling works which we do not think it necessary to discuss, and we come to the main question in the case.

The trial judge doubtless based his action on the case of *Burkett* v. *Mfg. Company,* 126 Tenn., 467, 150 S. W., 421, and this case is pressed upon the court by counsel for defendant company as being conclusive of this controversy.

*Burkett* v. *Mfg. Company,* supra, was a case in which the purchaser of a carriage, which had been bought from a dealer, sued the manufacturer for injuries sustained by reason of the spokes in one of the wheels breaking. It was held by this court that the manufacturer was not liable to the purchaser. The court said:

"The general rule is that a manufacturer is not liable to a third person, who buys his goods from an intermediate dealer, because of the want of any privity between the parties. The rule is different, however, if the manufacturer had knowledge of the defect, and put the article upon the market in that condition. In such case he is guilty of fraud, and is liable to any one into whose hands the article falls, and who is injured while using it properly. He is also liable to such third person, where the article sold is of such kind as to be imminently dangerous to human life or health; also, when an article, although not apparently dangerous, is known by him to be such, and he gives no notice of its qualities when he put it upon

the market." *Burkett* v. *Manufacturing Co.*, 126 Tenn., 472, 150 S. W. 421.

We do not think the foregoing case sustains the action of the court below. The present case falls within the second exception stated in *Burkett* v. *Mfg. Co.* All medicines, foods, and beverages are articles of such kind as to be imminently dangerous to human life or health unless care is exercised in their preparation.

Upon a person who undertakes the performance of an act, which if not done with care and skill will imperil the lives of others, the law imposes the duty of exercising the requisite care and skill. In such matters such a person is liable to others suffering from his negligence.

This liability does not depend on contract or privity, but arises from a breach of the legal duty, to which we have just referred. A tort is committed, a legal right invaded, by practices which prejudice another's health.

Speaking in a case similar to this one, the New Jersey Court of Errors and Appeals said:

"Among the most fundamental of personal rights, without which man could not live in a state of society, is the right of personal security, including 'the preservation of a man's health from such practices as may prejudice or annoy." First Blackstone's Comm., 129, 134. . . . To assert therefore that one living in a state of society organized, as ours is, according to the principles of the common law, need not be careful that his acts do not endanger the life or impair the health of his neighbor, seems to offend against the

fundamentals.'' *Tomlinson* v. *Armour & Co.*, 75 N. J. Law, 748, 70 Atl., 314, 19 L. R. A. (N. S.), 923.

Upon the principles stated, a negligent manufacturer has been held liable for injuries to consumers, purchasing from intermediate dealers, for the careless labeling of poisons and patent medicines. *Thomas* v. *Winchester,* 6 N. Y., 397, 57 Am. Dec., 455; *Blood Balm Co.* v. *Cooper,* 83 Ga., 457, 10 S. E., 118, 5 L. R. A., 612, 20 Am. St. Rep., 324. For negligently bottling beer with broken glass in the bottle. *Watson* v. *Augusta Brewing Co.,* 124 Ga., 121, 52 S. E., 152, 1 L. R. A. (N. S.), 1178, 110 Am. St. Rep., 157. For negligent preparation of mincemeat put up in a package. *Salmon* v. *Libby,* 219 Ill., 421, 76 N. E., 573. For the careless and negligent canning of spoiled meat. *Tomlinson* v. *Armour & Co.,* 75 N. J. L., 748, 70 Atl., 314, 19 L. R. A. (N. S.), 923. See, also, *Bishop* v. *Weber,* 139 Mass., 411, 1 N. E., 154, 52 Am. Rep., 715.

So when the manufacturer of this beverage undertook to place it on the market in sealed bottles, intending it to be purchased and taken into the human stomach, under such circumstances that neither the dealer nor the consumer had opportunity for knowledge of its contents, he likewise assumed the duty of exercising care to see that there was nothing unwholesome or injurious contained in said bottles. For a negligent breach of this duty, the manufacturer became liable to the person damaged thereby.

Practically all the modern cases are to the effect that the ultimate consumer of foods, medicines, or bev-

erages may bring his action against the manufacturer
for injuries caused by the negligent preparation of
such articles. This is certainly true where the articles
are sold in sealed packages and are not subject to in-
spection. Some of the cases place the liability on the
grounds heretofore stated. Others place it on pure
food statutes. Others say there is an implied war-
ranty when goods are dispensed in original packages,
which is available to all damaged by their use, and an-
other case says that the liability rests upon the de-
mands of social justice. See the cases collected in
a note to *Mazetti* v. *Armour & Co.,* 48 L. R. A. (N. S.),
213, 219, and in a note to *Tomlinson* v. *Armour & Co.,*
19 L. R. A. (N. S.), 923:

Upon whatever ground the liability of such a manu-
facturer to the ultimate consumer is placed, the result
is eminently satisfactory, conducive to the public wel-
fare, and one which we approve.

The judgment of the court of civil appeals is af-
firmed.