BERTHA CHYSKY, Appellant, v. DRAKE BROTHERS CO., INC., Respondent.

First Department, May 28, 1920.

Appeal from judgment dismissing complaint on opening of counsel — sale of cake containing nail imbedded therein — implied warranty of manufacturer who sells to retail dealer for purposes of resale — purchaser from retail dealer injured by such nail can recover on implied warranty of manufacturer and also for negligence.

On an appeal from a judgment for the defendant dismissing the complaint on the statement of the plaintiff's counsel in opening the case the facts stated in said opening must be taken to be true.

Where the plaintiff's counsel in his opening stated that he would prove that the defendant, a manufacturing baker which sold its goods to retail dealers, sold to such dealer a cake containing a nail invisibly imbedded therein which the plaintiff purchased from the retail dealer and attempted to eat with a result that her gums were lacerated by the nail resulting in infec-

tion and loss of teeth, etc., it was error to grant a nonsuit upon the theory that as no contractual relation existed between the plaintiff and the defendant there was no implied warranty by the latter that the cake was wholesome and fit for human consumption.

When the defendant manufactured such cake and put the same upon the market for sale knowing that the retail dealer would resell it to a consumer it impliedly represented that the cake was wholesome and fit for human consumption and the implied warranty inures to the benefit of the purchaser from the retail dealer.

The defendant is liable to the plaintiff not only for the damages which she sustained as the result of the breach of its implied warranty, but also for the injuries resulting from its negligence and want of care.

APPEAL by the plaintiff, Bertha Chysky, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 7th day of January, 1920, upon the dismissal of the complaint by direction of the court at the opening of the case.

*Henry Levis* of counsel [*Morris Kohn,* attorney], for the appellant.

*William Butler* of counsel [*R. Waldo MacKewn* with him on the brief], for the respondent.

MERRELL, J.:

This appeal is by the plaintiff from a judgment entered in defendant's favor dismissing the complaint, with costs, upon the opening of counsel for the plaintiff at the trial.

The action was to recover for personal injuries claimed to have been sustained by the plaintiff as the result of eating a cake, manufactured by the defendant, which she had purchased from a retail dealer. The complaint alleged that the defendant was a domestic corporation operating and controlling a baking establishment in the borough of Brooklyn, city of New York, where it manufactured and baked cakes for human consumption, and which defendant sold to persons willing to purchase the same; that on May 4, 1918, the plaintiff purchased of one Abraham, the proprietor of a bakery and lunch room at No. 367 Pearl street, borough of Manhattan, city of New York, and who was a customer of the defendant, a cake, made and manufactured by the defendant and purchased from said defendant by said Abraham, and, without any care-

lessness or negligence on the part of the plaintiff, she attempted to eat said cake, and owing to a wire nail or piece of wire which was embedded and baked into the dough of said cake, the gums of her mouth were punctured, causing her gums to become infected and plaintiff to suffer pain and distress, resulting in the loss of four of her teeth, and causing her to suffer other injuries, and necessitating the expenditure of large sums of money for medical and dental treatment.

Aside from admitting its incorporation, the defendant, by its answer, denied the allegations of the complaint, and as a separate defense alleged that plaintiff's injuries were caused in whole or in part by the negligence and carelessness of the plaintiff or of some third person over whom the defendant had no control and for whose acts it was not responsible.

The issues were brought to trial before the court and a jury at Trial Term, and upon opening of counsel for the plaintiff the court dismissed the complaint, holding that the plaintiff could not recover against the defendant because there was no contractual relation between the parties, and that the implied warranty as to the fitness of the cake for human consumption extended and operated only between the vendor and the purchaser; that plaintiff was a purchaser from a vendor other than the defendant and, therefore, had no cause of action against said defendant.

The opening of counsel was not taken by the stenographer, but, for the purposes of the record, the court stated to the stenographer, with the acquiescence of counsel, what counsel had said in opening the case to the jury. For the purposes of said motion to dismiss and upon this appeal the statements of fact contained in said opening must be taken as true, said facts being as follows: The defendant is in the business of manufacturing and selling to retail dealers cakes for consumption by the public; that in pursuance of its business as such manufacturer, the defendant sold to one Abraham, the keeper of a bakery and lunch room, certain cake; that Abraham's business was to sell such cake at retail to such of the public as patronized him; that plaintiff purchased one of the cakes so manufactured by the defendant and sold by the defendant to Abraham, and that in eating said cake a nail or piece of wire which was concealed in the interior of the cake and not

visible to the eye or discoverable upon examination, and which had been there placed in the process of manufacture, injured plaintiff's gums by having sunk into and punctured the same; that the nail or piece of wire was extracted from the gums and the plaintiff washed out and rinsed her mouth and a few hours afterwards the gums became swollen and inflamed and sore, resulting in plaintiff's becoming sick and as a consequence she was compelled to have three of her teeth extracted, and that she was damaged and injured by that cause; that plaintiff sues to recover against the defendant as manufacturer under the theory that the defendant, having manufactured and offered the cakes for sale, and plaintiff, in the ordinary and usual course of trade, having purchased one of these cakes which caused this injury which she could not discover upon examination, but which the defendant was bound to know by reason of the implied warranty which attached to cakes of this character, was liable for damages; that Abraham, the purchaser, could not discover the presence of the nail by an examination, and that its presence could only be discovered by breaking the cake open; that from such examination as purchasers of cakes could give, without breaking open the cake, he could not discover the presence of that nail; that the nail was in the cake at the time it came from the manufacturer. The court stated that such were the facts as stated by counsel for the plaintiff which he intended to prove; and the court assumed that plaintiff could prove such facts. On the complaint and on such opening to the jury the court dismissed the complaint, to which dismissal counsel for the plaintiff duly excepted.

In thus disposing of the case, we think the court clearly erred. The law is too well settled to require the citation of authorities that where food is manufactured and sold for human consumption, such sale is under an implied warranty that the food sold is wholesome and fit for human consumption. Such principle of law was not questioned by the court upon dismissing the complaint, nor does the respondent upon this appeal dispute the same. The court dismissed the complaint upon the ground that only between the retailer, Abraham, who sold the cake to the plaintiff, and the plaintiff, did any contractual relation exist, and that, therefore, there being

no contractual relation, in the opinion of the trial court, between the plaintiff and the defendant, the manufacturer of said cake, there was no implied warranty by said manufacturer to the plaintiff that said cake was wholesome and fit for human consumption. I am of the opinion that when the defendant manufactured this cake and put the same upon the market for sale, knowing that the retail dealer to whom it sold the cake would sell it to a consumer, it impliedly represented that the cake was wholesome and fit for human consumption. According to the facts stated in the opening of counsel for the plaintiff, the cake was manufactured by the defendant and sold to the retail dealer, Abraham; that contained therein at the time the cake was manufactured and not visible to the eye or discoverable by examination was the nail or piece of wire from which the plaintiff received her injuries. The purchaser, Abraham, could not discover said nail or wire by examination of the cake and the same could only be discovered by breaking the cake open. Under such circumstances I am of the opinion that the implied warranty of the defendant of the fitness of the cake for human consumption extended to the ultimate consumer of the cake, the plaintiff herein, and that said implied warranty inured to the benefit and protection of the plaintiff, although there was no direct contractual relation between the plaintiff and the manufacturer of the cake.

While the courts of this State do not seem to have passed upon the precise question involved upon this appeal, viz., the liability of the manufacturer of food to the consumer thereof, the question seems to have been determined in other jurisdictions. In *Parks* v. *Yost Pie Co.* (93 Kans. 334) it was held that where a manufacturer who sells pies made by him to a retail dealer, who in turn sells to a consumer, the manufacturer putting the pies upon the market for sale or for immediate consumption, does so upon an implied representation that they are wholesome and fit for human consumption, and that the manufacturer must know that the food which he has sold and placed upon the market is fit for consumption or take the consequences, if it proves destructive. In *Tomlinson* v. *Armour & Co.* (75 N. J. L. 748; 70 Atl. Rep. 314) it was held that irrespective of the

presence or absence of contractual obligations arising out of the dealings between manufacturer and retailer, and between the retailer and consumer, the manufacturer of canned goods is under the duty to him who, in the ordinary course of trade, becomes the ultimate consumer, to exercise care that the goods which he puts into the cans and sells to retail dealers to the end that such dealers may sell the same to customers and patrons as food, are wholesome and fit for food and not tainted with poison. The court said in that case: " When the manufacturer puts the goods upon the market in this form for sale and consumption, he, in effect, represents to each purchaser that the contents of the can are suited to the purpose for which it is sold, the same as if an express representation to that effect were imprinted upon a label."

We are, therefore, of the opinion that the defendant which manufactured the cake in question and which placed the same upon the market for sale and sold the same to the retailer, Abraham, knowing that the latter was to dispose of the cake to a customer, impliedly warranted that said cake was wholesome and fit for human consumption, and that it did not contain the wire or nail which injured the plaintiff; that said implied warranty of the defendant extended to the plaintiff, the ultimate consumer of the cake, and that under the facts as stated by plaintiff's counsel in his opening, the plaintiff was entitled to recover the pecuniary damages which she suffered as the result of the breach of said implied warranty.

That it is unnecessary to show privity of contract or employment between one who is injured and the person or corporation whose negligence and want of care caused such injuries has been thoroughly established by a long line of judicial decisions in this State. The leading case upon the subject was that of *Thomas* v. *Winchester* (6 N. Y. 397). There a recovery was had for damages caused by falsely labeling a poison. The poison was falsely labeled and sold by a wholesaler to a druggist, who, in turn, sold it to a customer. The seller who affixed the label was held liable to the customer upon the ground that a poison falsely labeled was liable to injure any one who gets it and because of the invisible danger, a duty rested upon the person labeling and putting the poison upon the market to see that it was properly labeled. While the courts, following

the decision in *Thomas* v. *Winchester*, in some cases, attempted to distinguish that case and narrow its application, the Court of Appeals finally, in *Devlin* v. *Smith* (89 N. Y. 470), adopted a more liberal rule. In the last-mentioned case the defendant, a contractor, erected a scaffold for a painter. Certain servants and employees of the painter were injured, and the contractor was held liable upon the ground that he knew that the scaffold, if insecurely built, constituted a dangerous trap. The contractor understood that the scaffold was to be used by the painter's employees and built it for that purpose. The Court of Appeals held that under such circumstances the contractor owed to the painters a duty to erect a scaffold with care, irrespective of his contract with their master. *Thomas* v. *Winchester* was followed in *Statler* v. *Ray Mfg. Co.* (195 N. Y. 478). In that case the defendant manufactured a large coffee urn which was installed in a restaurant. The urn exploded and injured the plaintiff, and the Court of Appeals held the manufacturer liable upon the ground that the urn " was of such a character inherently that, when applied to the purposes for which it was designed, it was liable to become a source of great danger to many people if not carefully and properly constructed." In a very recent case the Court of Appeals has followed the same principle. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382.) In that case the defendant was a manufacturer of automobiles. It sold one of its cars to a retail dealer who in turn resold it to the plaintiff. While the plaintiff was riding in the car it suddenly collapsed, and plaintiff was thrown out and injured. It was found that one of the wheels was made of defective wood, and its spokes crumbled into fragments. The wheel was not made by the defendant; but was bought from another manufacturer. It appeared from the evidence that the defects could have been discovered upon reasonable inspection, and that defendant omitted to inspect. It was not claimed that the defendant knew of the defect and willfully concealed it. The Court of Appeals held the defendant Buick Motor Company liable for plaintiff's injuries, and that the defendant's liability was not confined to the immediate purchaser. Judge CARDOZO, in discussing the rule established in *Thomas* v. *Winchester* (*supra*) and the effect thereon of the more recent

decisions of the Court of Appeals, said: " It may be that *Devlin* v. *Smith* and *Statler* v. *Ray Mfg. Co.* have extended the rule of *Thomas* v. *Winchester.* If so, this court is committed to the extension. The defendant argues that things imminently dangerous to life are poisons, explosives, deadly weapons — things whose normal function it is to injure or destroy. But whatever the rule in *Thomas* v. *Winchester* may once have been, it has no longer that restricted meaning. A scaffold (*Devlin* v. *Smith, supra*) is not inherently a destructive instrument. It becomes destructive only if imperfectly constructed. A large coffee urn (*Statler* v. *Ray Mfg. Co., supra*) may have within itself, if negligently made, the potency of danger, yet no one thinks of it as an implement whose normal function is destruction."

So, in the case at bar, the piece of wire or wire nail was not of itself inherently dangerous. It only became dangerous when it was baked into the cake which the plaintiff purchased of the retail dealer, and which resulted in her injury without warning. Judge CARDOZO further said in *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382, 389): " We hold, then, that the principle of *Thomas* v. *Winchester* is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully."

In *Rosenbusch* v. *Ambrosia Milk Corporation* (181 App. Div. 97) this court held the manufacturer of an artificial infant food which was widely sold in sealed packages to be chargeable with negligence where the manufacturer knew or should have known that the product was liable to deteriorate and become dangerous to health, either by time, climate or temperature or by the manner in which it was kept, if it failed to affix to the package the date of manufacture and the time during

which the ingredients might safely be used, or the manner in which they should be handled and preserved to prevent deterioration. Not only is the defendant liable to the plaintiff for the damages which she sustained as the result of the breach of defendant's implied warranty, but the defendant is liable to respond to the plaintiff in damages for the injuries which she sustained as the result of its negligence and want of care.

The judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.