ARMOUR & COMPANY *v.* DRURY.

Opinion delivered December 6, 1920.

1. APPEAL AND ERROR—VERDICT SUSTAINED BY CONFLICTING EVIDENCE.—In the case of a conflict in the evidence, a verdict for plaintiff will be sustained if supported by substantial evidence.

2. FOOD—IMPURITY—EVIDENCE.—Plaintiff's evidence that sausage eaten by his wife had in it a green substance with an offensive odor, in connection with defendant's testimony that the sausage could not be in that condition, when prepared according to the

methods employed in defendant's packing house, justified the jury in finding that the sausage in question was not prepared with ordinary care, and that it caused the death of plaintiff's wife.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*W. C. Kirk, Cul L. Pearce* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. This case was reviewed here in 140 Ark. 371. On second trial the evidence was substantially the same. This case is governed by the simple rules of negligence, and it was incumbent on plaintiff to show that defendant failed to exercise ordinary care; that, while the jury might, from the plaintiff's evidence, infer negligence, yet such inference could only carry the case to the jury in the absence of any evidence tending to show due care on the part of the defendant. It was error to refuse to direct a verdict under the former decision. 140 Ark. 378-9. The evidence was undisputed, and the jury should have been directed to find for defendant. 89 Ark. 574; 200 Fed. 322; 247 *Id.* 932; 89 Ark. 581; 100 *Id.* 462-4; 120 N. E. 396. The latter case is squarely in point. See, also, 196 Mass. 440-4; 82 N. E. 682; 15 L. R. A. (N. S.) 885; 163 Ill. 518; 100 N. E. 1078; 139 Mass. 411; 1 N. E. 154; 52 Am. Rep. 715; 34 L. R. A. 464; 132 Tenn. 546; 11 N. W. 392; 68 L. R. A. 342; 114 Ark. 140; 169 S. W. 810.

2. Negligence is a fact and must be proved, and an inference of negligence is rebutted by any evidence showing due care. 140 Ark. 378 and cases *supra.*

3. The uncontradicted evidence on part of defendant tended to show a high degree of care, thereby conclusively rebutting any inference of negligence which the jury might have drawn from the testimony of plaintiff. Persons or corporations who manufacture meat products for food must use ordinary care of prudent persons engaged in such business. 247 Fed. 921-31; 20 Atl. 517; 74 Fed. 195; 135 U. S. 554-570; 145 Fed. 424;

43 N. Y. 123; 38 N. E. 102; 39 *Id.* 958; 34 L. R. A. (N. S.) 1179-1191.

4. The court erred in giving instructions Nos. 1, 2 and 6 for plaintiff. There was no evidence that defendant was guilty of negligence in the manufacture and handling of the sausage.

*G. G. McKay* and *Brundidge & Neelly,* for appellees.

1. The testimony is practically the same as in 140 Ark. 378, and the case should be affirmed, as there was evidence to sustain the veridct.

2. There was proof of negligence, and this is not rebutted by evidence showing due care. 139 Ark. 495; 118 *Id.* 218; 77 *Id.* 9; 75 *Id.* 491; 121 *Id.* 531. See, also, 29 L. R. A. 718. The inference of negligence was not rebutted by showing due care. 29 Cyc. 636. The question of ordinary care is one for the jury to settle. 110 Ark. 495; 124 Ga. 121; 1 L. R. A. (N. S.) 1178; 110 Am. St. 157; 52 S. E. 152; 19 Am. Neg. Rep. 107; 5 A. L. R. 246.

3. The instructions correctly state the law, and the evidence shows negligence.

McCULLOCH, C. J. Appellee sued appellant to recover damages caused by alleged negligence of appellant in manufacturing and selling impure sausage which, when eaten, caused the death of appellee's wife. On a former trial of the case the trial court gave a peremptory instruction in favor of appellant, but this court held that it was error to give the instruction and reversed the judgment and remanded the cause for a new trial. 140 Ark. 371. The history of the case and the testimony adduced by appellee in support of his cause of action were set forth in the opinion of this court and need not be repeated. The testimony introduced by appellee is substantially the same as in the last trial. In disposing of the case here on the former appeal, we said: "We think the testimony as a whole is sufficient to warrant a submission of the question of negligence to the jury. This is not building a presumption or an inference of fact

upon a presumption, but the circumstances are such as fairly warrant the inference that Mrs. Drury ate the sausage, that the sausage contained a poison, and that it caused her sickness and death, and that appellee was negligent either in failing to discover the disease which produced the poisonous alkaloid or in failing to properly prepare or handle the meat, thereby causing it to become a poisonous substance.'' The proof practically excluded any idea of the meat becoming contaminated after it left the possession of appellee. It was received by the local dealer from the public carrier and taken from the original package on the day it was eaten by Mrs. Drury, and then contained a poisonous substance, * * * Appellee's method of slaughtering animals and preparing meat for distribution and sale were matters entirely within the knowledge of its own employees, and the circumstances found in this case were at least sufficient to make a *prima facie* case and shift to appellee the burden of proving that there was no negligence in this respect. It is not a case where the thing speaks for itself so as to create a presumption of negligence, but there are circumstances which warrant such an inference and cast upon appellee the burden of clearing itself of the charge by showing that ordinary care was observed in the preparation and distribution of the food, the consumption of which caused the injury complained of.''

At the trial now under review appellant introduced an abundance of testimony, not only on the issue of care in the preparation and handling of the meat, but also on the issue as to the cause of the sickness and death of appellee's wife. Expert testimony was introduced by appellant tending to establish the fact that Mrs. Drury's illness was not attributable to poison from eating sausage or at least that the cause of her illness was so much a matter of conjecture that the inference was not reasonably warranted that it was caused by eating impure sausage. However, this testimony raised a conflict on

that issue, and we can not say that the verdict of the jury is unsupported by substantial evidence.

The other testimony introduced by appellant gave a detailed account of the method in vogue in appellant's packing house of slaughtering animals and preparing the meat for food. It appears from this testimony that the work is done under the supervision of experienced men and under the inspection of agents of the Federal Government—that the animals slaughtered and meat thereof were carefully examined by skillful men before being prepared for food, to discover diseases of any kind, and that the employees handling the meat and the tools and machinery used were kept clean so as to prevent contamination. The testimony is reasonable and consistent and is undoubtedly sufficient to show that appellant employed ordinary care—even a higher degree of care—in selecting wholesome meat and in preparing it for use and getting it out to retail dealers. The sausage of which Mrs. Drury ate was prepared at the Kansas City packing house of appellant during the month of March, 1918. It was shipped from Kansas City on March 13th, and arrived at the Little Rock distributing office on March 17th, and it was shipped to Graham, the retailer at Bald Knob, on March 21st, reaching the latter place on March 21st, the same day it was sold to appellee and eaten by his wife. In preparing the sausage at the packing house the meat was sewed up in new canvass bags, after being chopped and ground, and was then cooked. It was then dipped in hot paraffin to prevent moulding and to keep it in good sanitary condition. After the stocks of sausages were paraffined, they were packed in boxes and then trucked to the chilling or refrigerating room and held until shipment, generally not more than two days later.

It is earnestly insisted that the verdict is not supported by sufficient evidence in that the testimony introduced by appellant as to the selection and preparation of meat is undisputed and shows that appellant exercised

ordinary care and was not guilty of negligence. It is not correct, however, to say that the testimony on that issue is undisputed. There is, indeed, no direct contradiction of the narrative of facts given by the witnesses introduced by appellant as to the method of selecting and preparing the meat. There is an indirect contradiction by the testimony of appellee to the effect that the stick of sausage of which his wife ate contained "a green, slimy piece about as big as your thumb" which was wet and soggy and gave out a bad odor—smelled like it was rotten. The jury could have rejected the testimony of appellee, but we must assume that they accepted it as true. The jury, notwithstanding the fact that the stick of sausage was impure, might have found that its condition was the result of accident and not necessarily of negligence, but the jury were not bound to so find from the testimony. Two of the witnesses introduced by appellant testified that the stick of sausage could not possibly be in the impure condition appellant claimed to find it in, after the meat was selected, prepared and handled according to the methods employed at appellants' packing house. This warranted the jury in finding, if they believed appellee's testimony that he found the stick of sausage to be in the condition as related, that appellant did not observe the precautions stated by the witnesses in selecting and preparing the meat and that there was negligence in one of these respects. This was, in other words, a circumstance which warranted the jury in finding that ordinary care was not observed by appellant. This made a substantial conflict in the testimony which it became the duty of the jury to settle. We can not say, therefore, that there is not a legal sufficiency of testimony to sustain the verdict.

The assignments of error in regard to instructions given by the court all go to the question of legal sufficiency of the evidence. We find no error, and the judgment is affirmed.

WOOD and SMITH, JJ., dissent.